RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0413p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

RICHARD COOEY, KENNETH BIROS
(Intervenor),

           *Plaintiff-Appellee,*

    *v.*

TED STRICKLAND, Governor, et al.,
           *Defendants-Appellants.*

No. 09-4300

Filed: December 4, 2009

Before: SILER, GIBBONS, and SUTTON, Circuit Judges.

─────────────────

## ORDER

─────────────────

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active[1] judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is denied.

Additional separate writings may follow.

─────────────────

[1]Judge Cook recused herself from participation in this ruling.

SUTTON, Circuit Judge, with whom GIBBONS, Circuit Judge, joins, concurring in the denial of rehearing *en banc*. In his petition for rehearing and for rehearing *en banc*, Kenneth Biros principally argues that the panel's order vacating the district court's stay of execution, *Cooey (Biros) v. Strickland*, ___ F.3d ___, No. 09-4300, 2009 WL 4061632 (6th Cir. Nov. 25, 2009), improperly applies the law of mootness. I disagree and remain comfortable with the panel's conclusion in the context of Ohio's change from a facially constitutional execution protocol, *see Baze v. Rees*, 553 U.S. ___, 128 S. Ct. 1520 (2008), to an improved execution protocol. But even if one is unsure about that conclusion, Biros faces a series of likelihood-of-success problems—some having nothing to do with the law of mootness—that stand in the way of granting his request to reinstate the district court's stay order.

In thinking about Biros' *en banc* petition and his underlying request to stay his December 8th execution, the key point, it seems to me, is that the district court's October 19, 2009 stay order does not offer any basis for staying the execution today. That order of course dealt with the old protocol, not the new one, and the order itself acknowledges that the State is considering changing its protocol and tells both parties that the court "reserves the right to reconsider this order staying the execution of Biros should a new protocol as developed by Defendants render Biros' claims regarding the May 2009 protocol moot." When the State returned to the district court on November 13th after announcing the new protocol, however, the district court refused to consider whether to vacate the stay before the execution date. The district court thus offered no new reasons (or for that matter old reasons) for continuing to keep the stay in place—even with respect to a new, markedly changed protocol.

That left the panel with a stay of execution that had no supporting rationale. The new procedure addressed two of the central complaints about Ohio's old execution protocol: the use of a three-drug protocol and the difficulty in accessing the veins of some individuals. With the adoption of a one-drug protocol and with the development of a back-up plan for individuals with difficult-to-access veins, Ohio had resolved the

central issues that might have supported a stay with respect to the old protocol—but not the new one.

That development leaves Biros with serious likelihood-of-success problems. One, for the reasons stated in the panel opinion, the adoption of this new procedure moots the old challenge. Two, even if one thinks there is room for disagreement about this point, that does not justify a stay. At a minimum, the new protocol "likely" moots the old challenge, and that is enough to create a likelihood-of-success problem for Biros when it comes to premising a request for a stay on orders related to a different protocol. Three, even if that is too much to accept, Biros still must show why the new protocol is likely unconstitutional—and the old orders (dealing with the prior procedure) get him nowhere on that point. Moot or not, in other words, the old orders still must provide a basis for staying *this* protocol. Since nearly everything in the assorted orders from the district court and our court with respect to the old protocol dealt with the three-drug protocol and difficult-to-access veins, these orders simply cannot provide a likelihood-of-success foundation for staying the new protocol.

Perhaps one exception to this last point is that, according to Biros, the old procedure and the new one share a common problem: poor training by the State of the relevant medical staff and the use of EMTs in implementing the protocol. But Kentucky faced similar allegations in *Baze*, and the Court upheld the procedure nonetheless. *Baze*, 128 S. Ct. at 1533–34. Through it all, it deserves emphasis, the one-drug protocol that Ohio now voluntarily plans to use is the one that the plaintiffs (unsuccessfully) claimed in *Baze* was constitutionally required. *Id.* at 1534.

Biros' petition for rehearing and rehearing *en banc* does not provide a basis for staying his December 8th execution.

KAREN NELSON MOORE, Circuit Judge, with whom MARTIN, COLE, and CLAY, Circuit Judges, join, dissenting.  This court should grant Biros's petition for rehearing en banc.  The panel's order in *Biros v. Strickland*, No. 09-4300 (6th Cir. Nov. 25, 2009), which held Biros's § 1983 challenge to Ohio's lethal-injection protocol moot, directly contradicts binding precedent regarding mootness in cases where a defendant has voluntarily ceased the challenged activity.  In finding Biros's case moot, the panel erroneously construed his challenge to the Ohio lethal-injection protocol as involving solely a challenge to the use of the particular three-drug cocktail, as opposed to the broader challenge as articulated within Biros's complaint and subsequent pleadings.  Moreover, to the extent that portions of Biros's initial claim are no longer implicated by the new protocol, the panel improperly concluded that there is no reasonable expectation that the alleged violation will recur and failed to hold the State to its formidable burden of showing mootness.  As these holdings run contrary to binding precedent, this case presents legal questions of exceptional importance and grave consequence.

"Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quotation omitted).  And it has been long established that generally "voluntary cessation of a challenged practice does not moot a case." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) (quotation omitted) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000); *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342–43 (6th Cir. 2007)). "Rather, voluntary conduct moots a case only in the rare instance where 'subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,'" *id.* (quoting *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003)), and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 400 U.S. at 631.  "When *both* conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Id.* (emphasis added).

In this case, the Defendant has not met its burden to show either condition, and the panel's conclusion to the contrary directly conflicts with prior precedent. First, based on the information that this court has regarding Ohio's new lethal-injection protocol, there is no indication that it "completely and irrevocably eradicated the effects" of Biros's alleged violation. *Id.* Not only does Biros challenge the use of the particular drugs—the only fact upon which the panel bases its order—but he has maintained continually that Ohio's procedures are "administered by inadequately trained personnel, who use inappropriate equipment and methods," Compl. at 3 (R. 127), and has also challenged the use of intravenous lines for the administration of the procedure, regardless of the drug. *Id.* at 11. In fact, in paragraph 28 of his Complaint, Biros challenges the use of the three-drug protocol as well as "any other procedures, practices, policies, protocols and/or means for accomplishing [his] execution by lethal injection that are or might be adopted by Defendants for use at [his] contemplated execution and which are the same as or similar to the [three-drug] protocol." *Id.* at 10. In short, although the drugs might be different, the procedure is still initiated via intravenous methods with the same personnel, and Ohio has presented no evidence that Biros's complaints regarding the personnel training and intravenous introduction have been resolved.

Second, to the extent that the new protocol does not implicate the challenge Biros made to the specific drugs, his claim is not moot. Although there is little indication that the State will continue to use the initially challenged three-drug cocktail now that it has developed a new procedure, in analyzing whether Biros's claim is moot, we must consider whether anything would prevent the State from doing so. *See Akers*, 352 F.3d at 1035. The promulgation and implementation of the lethal-injection protocol is solely within the discretion of the Ohio Department of Rehabilitation and Correction ("ODRC") and it is "not established by statute or administrative rule or regulation." *Cooey v. Strickland*, 479 F.3d 412, 426 (6th Cir. 2007) (Gilman, J., dissenting). "The ODRC can change the protocol at any time, regardless of whether an inmate is scheduled for execution," and it has indeed done so. *Id.* This Court has held previously that a challenge to a Michigan Department of Corrections Rule is not moot where "the

promulgation of [the] rule[] appears to be solely within the discretion of the MDOC, [and] there is no guarantee that MDOC will not change back to its older, stricter Rule as soon as th[e] action terminates." *Akers*, 352 F.3d at 1030.

In this case, other than providing the court with its word, the State has presented no evidence that it will not use any of the challenged drugs in the future or established that it is "absolutely clear" that the alleged violation will never recur. *Brunner*, 548 F.3d at 473. More broadly, the panel appears to allow Ohio to moot the case by simply volunteering to cease the challenged activity. Although we have no reason to doubt Ohio's sincerity, determining mootness based on a litigant's statement that it has no reason to resume the challenged activity, no matter how earnest, is not part of the mootness analysis. *See United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (finding a case "not technically moot" where the court only had the "appellees' own statement that it would be uneconomical for them to engage in [the challenged activity in the future], and concluding that "[s]uch a statement, standing alone, cannot suffice to satisfy the heavy burden of persuasion which we have held rests upon those in appellees' shoes").

The panel highlighted the fact that if Biros wants to challenge the new protocol there is nothing preventing him from bringing that suit prior to his execution, on December 8, 2009, which is less than one week from today. It is true that nothing prevents Biros from filing another § 1983 action to address specifically the drugs involved in the new one-drug protocol and the "back-up" plan. As highlighted above, however, much of his new complaint would necessarily mirror the one in the instant case. There is no sense in deeming moot portions of a claim and then encouraging Biros to bring them again.

As a further point, Judge Sutton's belief that even assuming a live controversy Biros would be unable to satisfy the requirements warranting the continuance of the district court's stay and would be in the same position as he is now does nothing to persuade me that this court should let stand a published panel opinion that is in blatant disregard of prior Circuit and Supreme Court precedent regarding mootness. Fidelity

to the law cannot be based solely on outcomes, but hinges on analysis.  The *Biros* panel opinion was not based on whether the stay was warranted after an analysis of the traditional stay factors and whether Biros could demonstrate a "likelihood of success" on the merits of his underlying § 1983 action.  If the panel had decided to vacate the district court's stay on grounds other than mootness then this would be a different case.  But as the opinion stands, it does nothing other than confuse well-established precedent in an effort to achieve a particular outcome in the most perfunctory manner possible.

I do not adopt Judge Sutton's conclusion that Biros would be unable to satisfy the requirements of a stay and see no need to pass judgment on the merits of that argument because it is not the basis upon which the panel decided Biros's case.  But I cannot help but notice that in discussing whether Biros is likely to succeed on the merits, Judge Sutton notes that Biros has argued that "the old procedure and the new one share a common problem: poor training by the State of the relevant medical staff and the use of EMTs in implementing the protocol."  This statement seemingly contradicts the *Biros* panel's conclusion that the new protocol completely mooted Biros's claim under the previous one.

In sum, the panel committed an "error of exceptional public importance" that "directly conflicts with prior . . . precedent'" in holding Biros's case moot and vacating the district court's stay of execution.  *Bell v. Bell*, 512 F.3d 223, 250 (6th Cir. 2008) (Moore, J., dissenting) (citing 6 Cir. R. 35(c)).  Six judges of this court have voted to rehear this case.  The rush to execution in this case is totally unwarranted, and the panel's justification is unsupportable.

BOYCE F. MARTIN, JR., Circuit Judge, with whom MOORE, COLE, and CLAY, Circuit Judges, join, dissenting from the denial of rehearing *en banc*.  I join Judge Moore's dissent pointing out the panel's clearly incorrect application of the mootness doctrine to Biros's claims.  I write separately to address what I perceive to be the unintended consequences of gilding the lily.

I would obviously have preferred that we allow Biros's claims, which are not moot, to be resolved on their merits.  But a majority of this Court disagrees, so we continue on our sprint towards the death bed.  I just wish that was where it ended.

Instead of merely allowing the panel's decision to stand on its own shaky foundation, two of my colleagues reaffirm the mootness ruling and then offer even more justification for the panel's decision to lift the stay.  However, I would rather that the panel's opinion be the last word on why the stay was lifted because at least that opinion cabins its damage to undermining our mootness precedents.

But my colleagues' concurrence in the denial of rehearing *en banc* goes further, most glaringly by prognosticating on the constitutionality of Ohio's new lethal injection protocol.  *See supra*, Op. of Sutton, J., at 2 ("I disagree and remain comfortable with the panel's conclusion in the context of Ohio's change from a facially constitutional execution protocol, *see Baze v. Rees*, 553 U.S. ___, 128 S. Ct. 1520 (2008), *to an improved execution protocol*.") (emphasis added) and at 3 ("Through it all, it deserves emphasis, the one-drug protocol that Ohio now voluntarily plans to use is the one that the plaintiffs (unsuccessfully) claimed in *Baze* was constitutionally required.").  The merits of Ohio's new protocol are certainly not before us—indeed, that is the fundamental basis for the panel's decision that Biros's claims based on the prior protocol are moot—but they inevitably will be, and the concurrence offers a sneak peek on the way that at least two of my colleagues view those merits.  On the whole, I would rather that we all went home today having only made a hash of our mootness jurisprudence rather than having made a hash of our mootness jurisprudence *and* having offered up views on an issue that is not currently, but soon will be, before us.

I therefore respectfully dissent from the denial of rehearing *en banc*.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____
Clerk